## MARATHON OIL CO. v. LAMBERT et al.

### No. 12076.

Court of Civil Appeals of Texas. Dallas.

Jan. 30, 1937.

Rehearing Denied March 20, 1937.

R. C. Gwilliam, of Tulsa, Okl., and Hiner & Pannill, of Fort Worth, for appellant.

Hamilton, Lipscomb & Wood, of Dallas, for appellees.

LOONEY, Justice.

V. C. Lambert, appellee, owner and lessor of a certain oil filling station located at the corner of Peak street and Parry avenue in the city of Dallas, sued Jack Cannon, original lessee of the premises, and the Marathon Oil Company, appellant, as assignee of Cannon, to recover overdue and unpaid rentals. The case was submitted to the court without a jury and resulted in judgment in favor of appellant, for the sum of $1,107.93, against both defendants, jointly and severally, from which the Marathon Oil Company alone appealed.

Appellee's cause of action against the appellant is based upon two grounds—first, that by virtue of its written agreement with Cannon, the company became assignee of the original lease, therefore was liable for rents accruing thereunder; and second, that, as a condition precedent to the transfer of the lease by Cannon to it, the company, by a writing executed by Ben Sprague, its agent and representative, obligated itself in writing to comply with the terms and conditions of the lease contract between appellee and Cannon.

The Marathon Oil Company defended on a number of grounds, contending that, the contract between it and Cannon was not an assignment but merely a sublease, therefore it was not liable for rents accruing under the contract between appellee and Cannon; and further, that Ben Sprague was

not authorized to execute any writing binding appellant to pay rentals accruing under the original lease; and even if Sprague had such authority, that the writing signed by him was without consideration; also alleged generally that it had neither orally nor in writing agreed to assume any part of Cannon's said obligations.

The material facts are these: By an instrument in writing dated August 15, 1928, appellee leased to Jack Cannon for a period of three years beginning October 12, 1928, the filling station in question at a gross rental of $3,550, payable in monthly installments. Several months prior to the expiration of the lease, the .Marathon Oil Company, desirous of obtaining control of the oil station in question as an outlet for its petroleum products, through Ben Sprague, its Dallas county representative, solicited Cannon's business, proposing that if he would secure from appellee a renewal of the lease for five years and assign same to'appellant, it would extend him (Cannon) additional credit. Accordingly, on July 21, 1931, Cannon obtained from appellee the five-year extension desired, agreeing to pay appellee a gross rental of $6,000 in installments of $100 per month.

As the original lease contained a provision forbidding Cannon, without the consent of appellee, to either sublease or assign the premises, on August 7, 1931, appellee addressed a letter to Cannon, saying: "It is agreeable with me and I herewith give you authority to sub-lease your station to the Marathon Oil Company, which is located on a lot 50 x 50 on the northwest 'corner of Peak and Parry Streets in the City of Dallas, but it is understood that. this instrument does not affect the obligations of this lease in carrying out the contract." However, the record fails to disclose that this letter was either brought to the attention of appellant, or acted upon by the parties, but, on August 13, 1931, appellee and Cannon entered into a written agreement, as follows: "It is agreed that the Lessee may .sublet to Marathon Oil Company the premises, being 50 by 50 feet at the Northwest corner of Peak Street and Parry Avenue in the City of Dallas, Texas, and also 20 by 50 feet lying adjacent thereto in the rear of the above described property, now covered by lease contract between the parties hereto, upon the condition that said subletting shall in no manner affect the obligation of the Lessee under said lease

contract to pay the rental under the lease contract as it becomes due and to perform all of the conditions and obligations under said lease contract, and that Marathon Oil Company will as sub-tenant use and occupy said premises in accordance with the terms and provisions of the present lease contract as extended, and that acceptance by the Lessor of rental from Marathon Oil Company shall in no manner impair or affect the obligation of the Lessee under the terms of said lease contract".. To this instrument the following footnote was appended: "Marathon Oil Company hereby agrees to the above conditions of subletting. Marathon Oil Company, by Ben Sprague." On August 21, 1931, following the execution of this instrument, a writing was entered into between Cannon and appellant, that appellee insists is an assignment of the original lease, whereas appellant contends that it evidences simply a sublease of the premises. The agreement was upon a printed form of the company, and contained, among others, the following provisions: "1. Lessor does by these presents, let, lease and demise unto Lessee the following described real estate, together with the improvements and equipment thereon, situated at Peak and Parry Street, in the City of Dallas, County of Dallas, State of Texas, and described: (describing premises). 2. The term of this lease shall be for Five and one-sixth years beginning on the 10th day of August, A. D. 1931, and ending on the 11th day of October, A. D. 1936, unless Lessee exercises its option to extend the term hereof as herein provided * * *". .(the term of 5⅙ years being the full term held by Cannon under the original lease, as extended), followed by provisions as to rentals and the manner of their payment, also a number of stipulations upon which appellant predicates the contention that a reversionary interest was retained by Cannon. On the same day, the instrument just described was executed, appellant and Cannon entered into another contract, adopting the company's "sub-lease and sales contract" form, · referring therein to Cannon as "dealer," reciting, "That Whereas, Company owns a valid lease on that certain filling station located in the City of Dallas (describing same), Whereas Dealer desires to sub-lease and operate said station and purchase for resale, petroleum products manufactured by Company. Now Therefore, in consideration of the mutual promises of the parties hereto, and One

Dollar ($1.00) cash in hand paid, receipt of which is hereby acknowledged, Company hereby sublets and sub-leases to the Dealer the above described service station for a term, at will, not exceeding the term to expire within one day from the expiration date of the lease now held by the Company. The terms and conditions of this sub-lease and sales contract are as follows:" (reciting the terms on which Cannon was to occupy the premises, sell the company's petroleum products, the discount allowable on purchases by dealer, and other recitations in regard to the payment of expenses and damages incident to the operation of the filling station, and prohibiting the assignment of the lease by dealer without the written consent of company), "and (the sub-lease) is subject to termination by either party at any time with or without notice, and upon termination by either party, Dealer agrees to at once deliver to the Company the possession of said service station and all equipment belonging to the Company located thereon, and that Dealer may have in his possession."

Pursuant to these arrangements, Cannon as subtenant under appellant, continued the occupancy of the premises, conducted the filling station, selling the petroleum products of appellant, until the 10th day of April, 1934, when by an instrument in writing, Cannon and appellant mutually agreed to cancel their written agreements. The record further discloses that the unpaid rentals due appellee under his lease contract with Cannon amounted to the sum for which judgment was rendered.

Responding to the request of appellant, the trial court filed findings, substantially, that appellee authorized Cannon to sublet to appellant the premises on condition that it would use and occupy same in accordance with the terms of the original lease contract; that appellant agreed to these terms, used and occupied the premises in accordance therewith; that the contract between Cannon and appellant contained no reverter provision, but was an assignment of the entire lease; that in accepting the terms of the subletting, Ben Sprague was acting for the Marathon Oil Company, within the scope of his authority, and that appellant ratified and confirmed his said acts; concluding, as matters of law, that the contract of August 21, 1931, between Cannon and appellant, being an assignment, created the relation of landlord and tenant between appellee and appellant, and that both Cannon and appellant were liable to appellee for the amount of unpaid rents, for which the judgment was rendered.

■■ The first question considered by us is the contention of appellant that the court erred in overruling its general demurrer to appellee's first amended original petition.

Appellee's petition set up the original lease between him and Cannon; the agreement extending same for five years, also the instrument of August 13, 1931, in which appellee agreed that Cannon "may sublet to Marathon Oil Company," the filling station premises; further alleging that appellant accepted the terms upon which appellee agreed to the subletting, by a footnote signed by its agent Ben Sprague, reading: "Marathon Oil Company hereby agrees to the above conditions of subletting." While appellee failed to specifically allege that Cannon either sublet the premises or assigned the lease to appellant, yet appellee did allege that, in confirmation and ratification of the agreement made in its name by Sprague, appellant took possession of the premises, claimed to own a valid lease thereon, and dealt with the same as owner of the leasehold estate.

We think the petition good against the general demurrer. However, in aid of the attacked pleading, the court was at liberty to look to appellant's answer wherein the written agreement between it and Cannon was fully pleaded (a copy as an exhibit being attached), thus supplying the alleged deficiency of the petition and curing the defect. See 33 Tex.Jur. p. 593, § 150; Davies v. Texas Emp. Ins. Ass'n (Tex.Com.App.) 16 S.W.(2d) 524.

Appellant insists that, being simply a subtenant under Cannon, it was not liable to appellee under the original lease contract between him and Cannon. This position is based upon the assumption that, in the contract under consideration, Cannon retained a reversionary interest in the leased premises.

■ Thus, we are confronted with this question: Was the contract between Cannon and appellant an assignment or merely a subletting? While it is true that appellee consented simply to a sublease of the premises by Cannon to the Oil Company, yet the character of the instrument that was executed and acted upon by them will control the rights and liabilities of the parties.

Having accepted and acted upon the instrument, appellant cannot take advantage of the fact that Cannon executed an assignment, if he did, instead of a lease, as appellee alone would be damaged by such action and alone could object to the exercise of excessive authority by Cannon.

By the instrument under consideration, we think it obvious that Cannon parted with the whole term, retaining no reversionary interest in the portion of the premises described, unless, as contended by appellant, such an interest was retained by either one or more of the following provisions of the contract, to wit: The provisions for the payment of rentals on an entirely different basis from the rentals agreed to be paid in the original lease; the provision that rentals due by the company might be applied on any indebtedness due it by Cannon; the provision giving the company the right to terminate the lease contract at any time by giving Cannon thirty days' notice; the provision obligating Cannon to maintain the premises in a proper state of repair, and on his failure authorizing the company, at its option, to make all necessary repairs at the cost of Cannon, offsetting same against rentals due; the provision that, if the use of the premises for filling station purposes should be prohibited by law, the lease should terminate at the option of the company; the provision obligating Cannon to pay all taxes against the premises and property owned by him, and all license fees, occupation and other taxes upon the business conducted on the premises; the provision obligating Cannon, at his own expense, to replace any equipment owned by him, becoming worn, broken, damaged, or destroyed through no fault of the company; the provision that if Cannon should default in the payment of any rent due his landlord, the company, at its option, could pay the same, to be offset against any rent due Cannon under the contract; the provision that, if from any cause the premises should be rendered unfit for the filling station business, rents should cease until the property could be restored, which Cannon obligated himself forthwith to do at his own expense.

We think it apparent that these provisions were placed in the contract for the exclusive benefit of appellant, that it alone could have claimed a right thereunder, and that neither evidences the slightest intention on the part of Cannon to retain a reversionary interest in the leased premises. A reversionary interest is a property right that belongs to the grantor, hence it is incongruous to say that such an interest may be based upon a provision of the conveyance inserted for the benefit alone of the grantee.

Appellant makes the further contention that the instrument of August 21, 1931, was a sublease and not an assignment of the leasehold, because only a portion of the premises held by Cannon under the original lease from appellee was transferred to appellant.

It will be observed that no contention is made that the amount recoverable was less than the amount for which the judgment was rendered, the contention being simply that the entire premises not having been conveyed by Cannon to appellant, that perforce of this fact the instrument was a sublease and not an assignment.

The original lease by appellant to Cannon described the filling station property, as follows: "Lying and being situated in the City and County of Dallas, and State of Texas, and being 50 x 50 feet at the Northwest corner of Peak Street and Parry Avenue, in the City of Dallas, fronting 50 feet on Peak Street and 50 feet on Parry Avenue, the same to be used and occupied as a gasoline and oil filling station and not otherwise, and also 20 x 50 feet lying adjacent thereto in the rear of the above described premises, the same to be used for washing and greasing cars, or for parking, or any other legitimate purpose in connection with said gasoline and oil filling station, or the greasing of cars. * * *" Substantially the same description was given in the subletting-consent agreement. The instrument under consideration from Cannon to appellee describes the property as real estate, improvements and equipment thereon, in the city of Dallas, being 50 x 50 feet at the Northwest corner of Peak and Parry avenue, fronting 50 feet on Peak and 50 feet on Parry, to be used by lessee, its successors and assigns, as a service station for the storing, selling, and handling of the petroleum products, omitting any mention of the back lot 20 x 50 feet.

Under the lease contracts—that is, the original contract between appellee and Cannon, and the sublease by appellant to Cannon—he continuously occupied both lots, using the premises in its entirety. So, the question presented is this: Did the failure to include both lots in the instrument of August 21, 1931, between Cannon and appel-

lant, render the same a sublease—in other words, may one become assignee simply of part of the leasehold estate? We think so, and in the instant case think appellant was an assignee, although only a portion of the leasehold was conveyed to him by Cannon for the full term.

In Gulf, C. & S. F. Ry. Co. v. Settegast, 79 Tex. 256, 15 S.W. 228, 229, the Supreme Court, speaking through Judge Gaines, used the following language in point: "When the lessee conveys his entire term in the whole or a part of the demised premises it is an assignment of the lease; but when he lets the premises for a less time than the period of his unexpired term it is an under-lease."

We hold therefore that appellant was assignee of the lease and, as such, was primarily liable for rents accruing under the contract between appellee and Cannon, and that appellant cannot escape liability by reason of its subsequent dealings with Cannon. Waggoner v. Edwards (Tex.Civ. App.) 68 S.W.(2d) 655, 663; Waggoner v. Edwards (Tex.Civ.App.) 83 S.W.(2d) 386, 388 (writ refused).

But whether the instrument was an assignment or a sublease is immaterial, in view of appellant's agreement to use and occupy the premises in accordance with the terms and provisions of the lease contract between appellee and Cannon; of which the most material being the provision for payment of rents.

The negotiations resulting in the execution of the instrument under consideration clearly reveal that appellant's purpose was to get control of the filling station as an outlet for its petroleum products; and to that end, through its agent, Ben Sprague (who conducted all negotiations leading up to the consummation of such purpose), agreed to the terms on which appellee consented that Cannon might sublet the premises.

A similar situation was presented to the Amarillo court in the case of Logan v. Green (Tex.Civ.App.) 53 S.W.(2d) 119, 122. In that case the court declined to go into a consideration of the distinction between an assignment and a subletting, saying: "Under our view of the case, whether the instrument in question belongs to either or neither of the classes mentioned [sub-lease or assignment] is immaterial, since by its terms appellant agreed to carry out the 'obligations therein imposed upon

said W. R. Bettes,' thus creating a privity of contract between appellant [Logan] and appellee [Green]."

Appellant contends, however, that the finding by the trial court, to the effect that Ben Sprague was appellant's agent and acted within the scope of his authority in accepting the conditions of the subletting agreement of August 13, 1931, between appellee and Cannon, was not supported by evidence. We overrule this contention. Sprague was appellant's Dallas county agent, described by Cannon as "manager"; it was he who conducted the negotiations that culminated in the execution of the different instruments, consummating appellant's purpose, and giving it control of the filling station in question.

It is also said that, even if Sprague did have authority to accept the conditions of the sublease, the agreement made by him was without consideration, hence no recovery could be had against appellant. This proposition is also overruled. The consideration was ample. Appellant could not legally have gotten control of the filling station as an outlet for its products, as it succeeded in doing, without appellee's consent, which was secured on the prescribed condition that appellant would use and occupy the station in accordance with the terms and provisions of the original lease between appellee and Cannon (as extended), the most material one being the provision requiring payment of monthly rental of $100.

The doctrine is well settled that where a lessee conveys his full term in the leased premises, or a part thereof, no reversionary interest remains, and in such a situation the grantee is liable to the landlord for rents just as the original lessee contracted to pay. Forrest v. Durnell, 86 Tex. 647, 26 S.W. 481; Davis v. Vidal, 105 Tex. 444, 151 S.W. 290, 42 L.R.A.(N.S.) 1084.

Failing to find reversible error, the judgment of the trial court is affirmed.

Affirmed.

## On Rehearing.

Among other grounds relied upon by appellant for rehearing is that we erred in finding as a fact that Ben Sprague was the Dallas county representative of appellant, because, as contended, "there is not in the record anywhere the scintilla of a suggestion that Ben Sprague was the representative of Marathon Oil Company in Dallas County; but, on the other hand, the only

witness called testified finally that Ben Sprague was acting as a salesman and solicitor for the sale of petroleum products of Marathon Oil Company."

Appellant puts the matter too strongly, we think, in saying that there is not in the record the scintilla of a suggestion that Sprague was its representative. Evidently, Sprague was appellant's salesman and solicitor for the sale of its products, but it is also undisputed that he alone represented appellant in conducting all negotiations that resulted in the execution of the written instruments involved. He first suggested that Cannon secure from Lambert a five-year extension of the lease and assign same to appellant, and on behalf of appellant, agreed in writing to the terms specified by Lambert for the assignment or sublease by Cannon to appellant. Cannon described Sprague as appellant's "manager," and while this is but a conclusion, yet Sprague's activities (result of which was accepted by appellant) speak for themselves, and we think show indisputably that he was authorized to act for appellant in the premises.

It is also contended that we erred in finding as a fact that appellant was desirous of obtaining control of the oil station as an outlet for its petroleum products, the insistence being that "There is no evidence in the record to show that appellant had any desire to control the station in question. * * *" We do not think error was committed in the respect mentioned. It was abundantly shown that appellant was not only desirous of obtaining control of the oil station as an outlet for its petroleum products, but, in bringing about the execution of the different instruments (through the instrumentality of Ben Sprague), precisely that result was accomplished. These instruments speak for themselves and we think conclusively show that thereby appellant obtained absolute control of the station in question.

It is further contended that the court erred in affirming the judgment against appellant for rents accruing under the extended lease contract between Lambert and Cannon upon the entire premises covered by said lease contract, "because only a portion of said premises was sublet to appellant, and there was no evidence as to what portion of the rents, provided in the extended lease contract, should apply to that portion of the premises sublet to appellant— to wit, 50x50 feet—and what portion was to accrue upon the remainder of the leased premises—to wit, 20x50 feet. The judgment rendered by the trial court was therefore excessive."

This question is raised for the first time in the motion for rehearing. The prior insistence being that because only a portion of the premises held by Cannon under lease from Lambert was transferred to appellant the instrument was simply a sublease and not an assignment. We fail to find either in appellant's pleading, motion for a new trial, or in its assignments of error, basis for the contention that the judgment is excessive for the reason stated.

We have duly considered all grounds urged by appellant for rehearing, but finding no reason to change our decision, the motion is overruled.

Motion for rehearing overruled.