Harry **EVONS** et al., Appellants,

v.

Province M. **WINKLER**, Appellee.

No. 44.

Court of Civil Appeals of Texas.

Corpus Christi.

Feb. 25, 1965.

Motions for Rehearing Denied

March 18, 1965.

Bradford Miller, San Antonio, James W. Wray of Lewright, Dyer & Redford, Corpus Christi, for appellants.

John R. Padilla, Corpus Christi, for appellee.

GREEN, Chief Justice.

This is a suit for delinquent rents accruing under a written lease contract. The suit was filed by appellee Winkler, owner and lessor of the realty in question, against Arthur Murray Dance Studios of San Antonio and Corpus Christi, Inc., a Delaware corporation, original lessee named in the lease, and Harry Evons, Daniel H. Kirk, Michael V. Lawless, Leigh Dickey and Jack Klein, all allegedly subsequent assignees. Evons was sued in both his individual capacity and as statutory trustee of the assets of the dissolved corporation lessee. Trial was to the court without a jury.

Pursuant to a stipulation, agreed judgment was rendered against Dickey and Klein for $3,283.94. Default judgment was entered against the corporation for $13,503.90. Judgment in the same sum was rendered, after trial, against Evons individually and as statutory trustee of the assets of the dissolved corporation, and against Kirk and Lawless. The final decree recited joint and several judgment, so as to avoid double recovery on the part of Winkler. Evons and Lawless have each appealed. Evons requested and the trial court filed Findings of Fact and Conclusions of Law, insofar as the judgment relates to recovery against him. Lawless requested no such findings.

Winkler was the only witness testifying as to the facts of the case. His evidence shows that by written instrument executed May 8, 1952, he leased certain described premises in Corpus Christi to Arthur Murray Dance Studios of San Antonio and Corpus Christi, Inc., for a term of ten years from and after June 1, 1952, for an annual rental of $5,000.00 payable in monthly installments of $416.66. (The difference of 8 cents per year was resolved favorably to defendants.) Evons signed and acknowledged this contract as president of defendant corporation. From June 1, 1952, for

several years, a dance studio was conducted in these premises, and rent was paid satisfactorily until August, 1957.

The defendant dance studio corporation was voluntarily dissolved on March 25, 1953, and its permit to do business in Texas was cancelled on April 1, 1953. This fact did not become known to Winkler until September, 1956, since business continued to be conducted and rent paid as provided in the lease contract. By instrument dated July 1, 1956, and signed by Evons, Lawless and Kirk, Evons, representing himself to be the lessee in the aforementioned lease contract, assigned said lease to defendants Michael V. Lawless and Daniel H. Kirk, the said Lawless and Kirk agreeing to "pay the rent which may hereafter become due, according to the terms of said lease, and that we will perform all the covenants in said lease contained, which are to be performed by the said lessee."

The lease provided that the lessee should not assign the contract, or underlet the premises, without the written consent of lessor. See also Article 5237, Vernon's Ann.Tex.Civ.St. When the written transfer of the lease from Evons to Lawless and Kirk was submitted to Winkler, he forwarded it to his mortgagee, since his mortgage provided that he make no changes in the lease without approval. Correspondence followed, and on September 17, 1956, the attorneys for the mortgagee wrote Winkler to inquire why Evons, and not the dance studio corporation, executed the transfer of the lease as lessee. This letter was sent by Winkler to Evons, and in reply Evons wrote Winkler on September 24, 1956, as follows:

"I have just returned from the hospital, and I am happy to answer the questions posed by Levy and Levy:

I, Harry Evons, succeeded the rights of the dissolved corporation as to the subject lease. This was brought about by a dissolution order from the State of Delaware.

There is a signed instrument which can be referred to as evidence if this is absolutely necessary. However, I am not as yet able to go to the office, and it may take a little while before we can arrange for a photostatic copy to be sent, if that is necessary * * *.

Cordially yours,

HARRY EVONS."

This letter being forwarded to Levy & Levy, attorneys for the mortgagee, they authorized Winkler to give his consent to the assignment of the lease by Evons to Lawless and Kirk, which he did by written instrument dated October 4, 1956, subject, however, to the payment and performance by Lawless and Kirk of all agreements and covenants contained in the original lease.

By separate instrument dated and effective July 1, 1956, executed by Evons as Seller and Lawless and Kirk as Buyers, for a recited consideration of $60,000.00, Evons sold to Buyers the entire business in connection with a school of dancing *"conducted by Seller"* in the premises in question, including the franchise and license agreement issued to Seller by Arthur Murray, Inc. of New York, and the "right, title, interest and estate of the Lessee provided by the Lease under which Seller holds said premises." Among other provisions, this instrument contains the following:

"Buyers do hereby expressly assume the performance of the Lessee provided by the aforesaid Lease under which the premises known as 718 North Lower Broadway, Corpus Christi, Texas are held by Seller, and do hereby agree to hold Seller harmless from the performance of the obligations imposed upon Lessee by said Lease."

We are setting out these facts in some detail, because of the contention of appellant Evons for himself, and also of appellant Lawless, for himself, that there is no evidence and insufficient evidence to show liability on them for delinquent rent under the lease contract.

Lawless and Kirk took over the dance studio affairs under the above instruments and continued to conduct the business for a period of somewhere between two and three years. Rent was paid regularly through August, 1957. Thereafter, there were some delinquencies so that by the end of 1958 unpaid rent amounted to $999.92. The record is not clear as to just who did operate this business during the early months of 1959. Winkler testified that Kirk and Lawless both stated that they didn't own or operate the studio in 1959. In answer to a request for admissions duly submitted prior to trial and read into evidence, said two defendants denied that they owned an Arthur Murray Dance Studio in Corpus Christi, Texas, during the year 1959. Obviously, business was conducted on the premises, since, while no rent was paid in January, 1959, the contract rent of $416.66 was paid in each of February, March and April of that year.

Winkler testified that prior to June, 1959, several letters were written to Lawless and Kirk concerning the back rent under the contract, but no reply to such letters was received. He made frequent visits to the studio for collection purposes, with no success. He thereupon employed Dave Coover as his lawyer and agent, and as he testified, "Turned the thing over to him."

Coover, on behalf of Winkler, sometime in June, 1959, when the delinquent rent under the contract amounted to $2,250.56, entered into an oral month to month lease agreement of the premises with defendants Dickey and Klein, under which the latter entered upon and occupied the premises from June, 1959, to December, 1960. In August, 1959, Lawless and Kirk, by written instrument, sold the entire business, including furniture, franchise, school, etc., to Dickey and Klein for a recited consideration of $35,000.00. A large part of this consideration appears to be represented by the assumption by Buyers of the obligation to pay existing indebtedness of the business. This sale was made to be effective as of June 1, 1959.

Payments of rent made by Dickey and Klein during the remainder of 1959 were sufficient so that after a portion was applied to current rent and the remainder to the delinquent rent accruing while Lawless and Kirk were in possession, the amount owing at the end of the year was reduced to $375.59. However, in 1960 only two payments, amounting to $932.66, were made, and in December, 1960, the building was vacated and the keys were returned to Winkler. No further payments of rent have been made. Although he has tried diligently to lease the premises since, in order to minimize his loss, Winkler has been unable to do so, and by the end of the ten-year period covered by the contract, in June, 1962, the delinquent unpaid rent amounted to $11,626.07. This sum plus interest, plus insurance premiums to be discussed later represents the amount of the judgment recovered jointly and severally against the defendants, only two of whom have appealed, namely Lawless and Evons.

## APPEAL OF APPELLANT LAWLESS

Defendants Lawless and Kirk, in their second amended original answer included a cross-action naming as cross-defendants Winkler, Evons, Dickey and his wife, and Klein and his wife. When the cause was called for trial in the district court, the attorney for Lawless and Kirk, a resident of Houston, though duly and timely notified of the setting, failed to appear, nor did he or his clients furnish any explanation for his non-appearance. The trial proceeded as to all parties, with no attorney present in court representing Lawless and Kirk.

At the start of the trial, counsel for Dickey and Klein moved that the said cross-action be dismissed. The court announced that he would take this motion with the case and rule on it afterwards. As the testimony was about to end, this motion was renewed and sustained, and the court dismissed the cross-action *with prejudice*, and granted judgment against cross-plaintiffs on the cross-action in his final decree.

Appellant Lawless is represented on this appeal by counsel other than the attorney who failed to make his appearance in the trial court. His first point of error complains, not of the dismissal of the cross-action, but of the dismissal *with prejudice,* together with the rendition of judgment affirmatively denying recovery thereon. This point is sustained. We quote from the opinion of Chief Justice Hickman in Smock v. Fischel, 146 Tex. 397, 207 S.W.2d 891, as follows:

> "It is a well-established rule that when a plaintiff fails to appear and prosecute his case, the court can not try the plaintiff's cause of action, but the only remedy is to dismiss the same. (Authorities). We see no reason why this same rule should not apply to a defendant's cross-action when the defendant fails to appear and prosecute the same. (Authorities). Under these circumstances the court should not have rendered judgment against the defendant on his cross-action, but should have dismissed the same."

In Freeman v. Freeman, 160 Tex. 148, 327 S.W.2d 428, the Court, after stating: "The law of this state does not authorize a defendant to take a default judgment which adjudicates against the plaintiff the merits of his suit," proceeds to hold such a judgment wholly void.

The judgment as entered is ordered reformed so that it shall reflect that the cross-action filed by Lawless and Kirk is dismissed without prejudice, and so much of said judgment as provides that cross-plaintiffs take nothing against cross-defendants by virtue of said cross-action is deleted from said decree. Murphy v. Stigall, Tex.Civ. App., 352 S.W.2d 918, wr. ref.

Appellant Lawless' second and last point of error reads:

> "The Judgment against Defendant, Michael V. Lawless, is not supported by the evidence since the uncontradicted evidence and the stipulations of the parties show that the Plaintiff, Province M. Winkler, abrogated the lease in question by entering into an oral lease with the Defendants, Dickey and Klein, at a time prior to any delinquency for which this judgment was entered."

The original lease, the obligations of which had been assumed by Lawless and Kirk in the transfer from Evons to them, stated, among other provisions, as follows:

> "That in case of default in any of these covenants, the Lessor may enforce the performance thereof in any modes provided by law, and may declare the lease forfeited at his discretion * * * or his agent or attorney may resume possession of the premises and relet the same for the remainder of the term at the best rent he may obtain, for account of the Lessee, who shall make good any deficiency; * *."

Although the testimony, as summarized above, is incomplete as to whether or not Lawless and Kirk had abandoned the premises by June, 1959, we feel that it is sufficient to sustain an implied finding by the trial court that such was the case. In such event, even without the contract provision last above quoted, the landlord would have had the right to relet the property and, not having agreed to surrender his rights under the lease contract, recover from the former lessee or assignee the amount of the agreed rent for the entire contractual period of the lease less the sum that he may realize from the re-letting, after the use of reasonable diligence to obtain a tenant. Marathon Oil Co. v. Rone, Tex.Civ.App., 83 S.W.2d 1028, writ ref.; Marathon Oil Co. v. Edwards, Tex.Civ.App., 96 S.W.2d 551, writ dism.; Nelson v. Seidel, Tex.Civ.App., 328 S.W.2d 805, writ ref., n. r. e.; Employment Advisors, Inc. v. Sparks, Tex.Civ.App., 364 S.W.2d 478, writ ref., n. r. e.; White v. Watkins, Tex.Civ.App., 385 S.W.2d 267.

The above quoted provision of the lease gave lessor a choice as to what he

could do in the event of default by lessee in any of the lease covenants. He could declare the lease forfeited, which would end the contract, and give him the right to collect past due but not future rent. Rohrt v. Kelley Manufacturing Company, 162 Tex. 534, 349 S.W.2d 95. His other choice, as expressly stated in the contract, was to do just what was done in this instance, in which event lessee was required "to make good any deficiency." When Winkler, through his attorney and agent Coover, re-entered and re-let the premises to Dickey and Klein in June, 1959, Lawless and Kirk had defaulted on their rent payments to the extent of $2,250.56. There is nothing in the conduct of Winkler with reference to this re-letting to indicate any intention on his part to abrogate or forfeit any of his rights under the lease or the assignment to Lawless and Kirk. The fact that a considerable portion of the rent paid by Dickey and Klein during the latter months of 1959 was applied to the unpaid rent owed by Lawless and Kirk so that their delinquency was reduced to $375.59 in December, 1959, is circumstantial evidence that this re-letting was for their account. Though lessor was unable to re-let for the entire remainder of the term, the action he took proved satisfactory and beneficial to Lawless and Kirk, for they recognized this re-letting of the premises under the lease, and sold the business to the new tenants.

We hold that Winkler did not abrogate the lease contract, the performance of the obligations of which had been expressly assumed by Lawless and Kirk, by entering into the oral lease with Dickey and Klein, and appellant Lawless' second point is overruled.

The judgment against appellant Lawless is reformed as hereinabove ordered, and as so reformed is affirmed.

## APPEAL OF APPELLANT EVONS

Evons was sued and judgment rendered against him in a dual capacity, (1) individually, and (2) as statutory trustee of the assets of Arthur Murray Dance Studios of San Antonio and Corpus Christi, Inc. While we hold that the pleadings and testimony do not justify a judgment against him as such statutory trustee, this becomes academic in view of our further holding that under the pleadings and testimony the trial court did not commit error in rendering judgment against Evons individually.

The liability of Evons as statutory trustee of the assets of the dissolved corporation would be based on the provisions of Article 1388, V.A.T.S., in effect at the time of the accrual of the cause of action, but repealed in 1961 on passage of the Business Corporations Act, V.A.T.S. This statute gave the procedure to be taken by the president and directors of a corporation upon its dissolution where no receiver is appointed by a court of competent jurisdiction, and in the last sentence thereof provides that "Said trustees (the president and directors) shall be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands."

■ Thus, in order to show liability under this statute, plaintiff would be required to plead and prove that on dissolution of the corporation Evons, as president and director, had received property and effects of the corporation, and his liability would be limited to the extent of such property and effects so received. World Broadcasting System, Inc. v. Bass, 160 Tex. 261, 328 S.W.2d 863; Love v. Gamer, Tex.Civ.App., 64 S.W.2d 393, writ dism.; Orange Lumber Co. v. Toole, Tex.Civ.App., 181 S.W. 823, writ ref. Responsibility under this statute, if properly plead and proved, would be individual liability of the defendant, but where we use the term "individual liability", we refer to liability not connected with the statute.

■ The sole allegations in plaintiff's trial petition as to Evons' liability as a statutory trustee are as follows:

"That on or about the 25th day of March 1953, Arthur Murray Dance Studios of San Antonio and Corpus Christi, Inc., was dissolved. That at such time of dissolution there was an unexpired term and obligation on the part of Arthur Murray Dance Studios on such written agreement in excess of Nine (9) years. That at the time of dissolution of said corporation, defendant, Harry Evons, was the president, a director and a principal stockholder in said corporation. That sometime after said May 1, 1952, the assets of said Arthur Murray Dance Studios were distributed and misappropriated by the said Harry Evons. That said assets of said corporation were distributed to the stockholders of said corporation without the payment and discharge of, or making adequate provisions for the obligations created by said written agreement of lease, to the detriment and damage of plaintiff in the sum or sums as more fully shown hereinafter."

There were no allegations concerning the value of any corporate property coming into Evons' possession, or that the extent of such property received and misappropriated or distributed amounted to a sum equal to or in excess of the sum sought to be recovered from Evons as trustee.

In the testimony, plaintiff failed to comply with the requirements of Article 1388 to show liability of Evons as statutory trustee. Although the evidence shows, as will be discussed later, that Evons succeeded to the rights of the corporation as lessee under the lease in question, the value of such lease was not attempted to be established. It was not shown that he received and distributed any other property or effects of the corporation of any value, nor was his liability sought to be limited to the extent of any property received by him. It was in evidence that he sold the dance studio business, but there is no testimony that this property, which was not a part of the lease

contract, ever belonged to the corporation or was a part of its assets.

Hence we find that neither pleadings nor proof justified a judgment against Evons as statutory trustee of the assets of Arthur Murray Dance Studios of San Antonio and Corpus Christi, Inc.

Evons' first three points assign error of the trial court in overruling certain special exceptions which, though somewhat general and multifarious, appear to be directed in part at the insufficiency of plaintiff's trial petition to show a cause of action against Evons as statutory trustee. As already stated, we agree that no such cause of action was alleged.

■ Such exceptions also are in part directed to the alleged insufficiency of plaintiff's petition to plead a cause of action against Evons individually. We have carefully examined the petition, and find that such a cause of action is plead. The actions of Evons in representing himself to Winkler as the successor of the defunct corporation as lessee in the lease contract, thus causing Winkler and the subsequent assignees to enter into the transfer of the lease at a time when rental payments were current, and other facts leading to Evons assumption of the liabilities and financial responsibilities under the lease contract, were alleged. The assignment of the lease from Evons to Lawless and Kirk, executed by Evons as lessee, is attached as an exhibit. Without detailing such allegations further, since Evons' exceptions to the petition are actually too general and multifarious to require doing so, we hold that in so far as Evons contends that no cause of action was plead against him individually, the trial court did not err in overruling his exceptions to plaintiff's petition.

■ Evons' points 4, 5, 11 and 13 relate to the statutes of limitations. Points 4 and 5 concern alleged error of the court in overruling special exceptions in which the two and four year statutes of limitations are urged as a bar to plaintiff's suit. His

11th point alleges error in the court's finding of fact that the cause of action did not accrue more than two nor more than four years prior to the institution of the suit. His 13th point is that the court erred in his conclusion of law that the cause was not barred by the two or the four year statute of limitations.

The pleadings and the evidence showed that all delinquent rent sued for accrued after January 1, 1960. Plaintiff's petition was filed January 6, 1961, on a *written* contract which would not terminate until May 31, 1962. The fourth amended petition, on which this case went to trial, which alleged no new items of recovery except that by the time of its filing the contract was no longer executory, was filed December 21, 1962. Thus it is apparent that Evons' points 4, 5, 11, and 13, are without merit, and same are overruled.

■ Evons' point 6 complains of the court's action in overruling his special exception to that portion of plaintiff's petition seeking recovery for insurance premiums on the property paid by plaintiff for the years 1959, 1960 and 1961. This point is overruled. The lease, a copy of which was attached to the petition, provided: .

"The Lessee shall carry fire and extended coverage insurance for the period of this lease in the minimum amount required by the loan company at the time of the acceptance of this lease."

The petition alleged the amount of insurance required under this provision, and the cost of the premiums, and that lessees had failed to pay such premiums, requiring plaintiff to do so. This was a proper charge against lessees under the provisions of the contract, and the trial court correctly overruled the exception.

Points 7, 16, 18, 19 and 20, set out and argued in appellant Evons' brief, concern the issue of Evons' liability as statutory trustee. We have already determined this matter favorably to Evons' contentions and need say nothing additional thereon.

Evons' points 8, 9, 10 and 12 are each concerned with certain findings of fact made by the trial court as to Evons' individual liability, each point asserting that there is no evidence to support the finding therein referred to, and that the finding is against the great weight and preponderance of the evidence. By his points 14, 15 and 17, Evons states that the trial court erred in making certain conclusions of law. We copy below the findings and conclusions that are complained of.

### "Findings of Fact"

"19. That the lease of the subject premises was transferred by Arthur Murray Dance Studios of San Antonio and Corpus Christi, Inc. to Harry Evons.

"20. That Harry Evons represented to Province M. Winkler, Michael V. Lawless and Daniel H. Kirk that he, Harry Evons, owned the lease of the subject premises and he held himself out as being the owner of such.

"21. That Province M. Winkler executed the consent to assignment of the lease from Harry Evons to Michael V. Lawless and Daniel H. Kirk in reliance on the representations of Harry Evons that he, Harry Evons, owned the lease."

"24. That sometime between May 8, 1952, and July 1, 1956, Harry Evons, individually, acquired the Arthur Murray Dance Studio occupying the subject premises."

### "Conclusions of Law"

"3. That sometime between May 8, 1952, and July 1, 1956, Harry Evons, individually, became a lessee of the subject premises under the written lease agreement dated May 8, 1952, between plaintiff and Arthur Murray

Dance Studios of San Antonio and Corpus Christi, Inc.

"4. That Harry Evons is now estopped to deny that he was a lessee of the subject premises under the written lease agreement dated May 8, 1952, between Plaintiff and Arthur Murray Dance Studios of San Antonio and Corpus Christi, Inc.

"7. That when Harry Evons acquired the Arthur Murray Dance Studio he was chargeable with notice and knowledge of the remaining obligation under the written lease dated May 8, 1952."

We have set forth earlier in this opinion a brief partial summary of the undisputed testimony produced in the trial. Though Evons did not see fit to testify, we find that not alone from Winkler's testimony, but from Evons' own actions and written words, the trial court was justified in holding not only that Evons was estopped from denying his liability to Winkler under the lease contract, but that he individually had succeeded to the rights *and obligations* of the defunct corporation as to such contract. It is shown in evidence that the letter he wrote on September 24, 1956, quoted above, was directly responsible for Winkler executing the written consent for the transfer of the lease from Evons, as lessee, to Lawless and Kirk. Such consent was given by Winkler to Evons expressly subject to the performance by assignees of all agreements and covenants contained in the original lease. In the contract of sale between Evons and Lawless and Kirk mentioned earlier, Evons recognized the obligations imposed upon lessee by said lease. He stated in such instrument that the school of dancing being sold was conducted by him. In answer to a request for admission, introduced in evidence, Evons stated that he represented to Lawless and Kirk that he owned in his individual capacity a leasehold interest in the premises in question. In an interlocutory default judgment taken by Evons against cross-defendant Kirk on

a cross-action a week before the trial in the instant case, introduced in evidence without objection, the court found, at Evons' instance, that "the said lease was transferred by said lessee (the defunct corporation) to Harry Evons' * * *."

The record is replete with such instances of conduct and statements of Evons which are consistent only with the conclusion that he, in his individual capacity, had acquired the lease in issue, recognized his obligations as assignee or successor to the original lessee, and had legally assumed such obligations.

It is a well-settled rule of law that one who accepts the benefits of a contract must also assume its burdens. Daniel v. Goesl, 161 Tex. 490, 341 S.W.2d 892; Terrazas v. Carroll, Tex.Civ.App., 277 S.W.2d 274. Where an entire lease is transferred, the assignee, as a matter of law, is rendered liable for the payment to lessor of rents as the original lessee contracted to pay, and according to the terms of the lease. Jackson v. Knight, Tex.Civ.App., 194 S.W. 844, writ ref.; Terrazas v. Carroll, supra; Marathon Oil Co. v. Rone, Tex.Civ.App., 83 S.W.2d 1028, writ ref.; Waggoner v. Edwards, Tex.Civ.App., 83 S.W.2d 386, writ ref.; Stark v. American Nat. Bank of Beaumont, Tex.Civ.App., 100 S.W.2d 208, writ ref.

We hold that the evidence before the trial court amply justified his making the findings of fact and conclusions of law here assigned as error.

We have carefully reviewed all of appellant Evons' points of error, and find that none of them show reversible error.

The judgment rendered against appellant Evons will be reformed so as to delete all reference to recovery against him as statutory trustee of the assets of Arthur Murray Dance Studios of San Antonio and Corpus Christi, Inc. The judgment against Harry Evons individually is affirmed.

Since appellant Harry Evons has filed a supersedeas bond, this judgment against him shall include the sureties on said bond.

Reformed and affirmed.